**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JANET KLIMCZAK,

    Plaintiff,

       v.

SHOE SHOW COMPANIES,

    Defendant.

CIVIL ACTION NO. 3:03-CV-1973

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant's Motion For Summary Judgment (Doc. 12).  For the reasons set forth below, the Court will grant Defendant's motion in part and deny it in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff, Janet Klimczak, was born on May 25, 1953 in the country of Poland. (Doc. 22-6 at ¶ 3.)  Plaintiff speaks English as her second language and has a noticeable accent.  (*Id.* at ¶¶ 2, 7, 13.)  In 1996, she was hired by Stacy Malcolm ("Malcolm") as a Sales Associate with Defendant, The Shoe Show of Rocky Mount, Inc. ("Shoe Show"). (*Id.* at ¶¶ 6, 8.)  As a Sales Associate, Plaintiff received an hourly wage plus seven (7) percent commission.  (*Id.* at ¶¶ 32-33.)  Plaintiff submitted evidence that during the beginning of her employment under Stacy Malcolm, she had no arguments or confrontations with her co-workers and received commendations.  (*Id.* at ¶¶ 9-22; Doc. 20-15 at 1-5.)  The instances addressed in Plaintiff's complaint began when Nicole Sandy ("Sandy") became a key holder and continued in early May of 2002, when Sandy

replaced Malcolm as Store Manager. (*Id.* at ¶¶ 46 (a), (h).)  Plaintiff began reporting

deficiencies in Sandy's work to the District Manager, Tracy Oross ("Oross").   (Doc.19-2

at ¶ 5.)  Plaintiff submitted evidence that Oross warned Sandy on the performance

deficiencies Plaintiff had brought to her attention and Sandy then began to retaliate

against Plaintiff.  (Doc.19-2 at ¶ 6.)

On June 5, 2002, Lindsey Kossar, acting Assistant Manager, told the Plaintiff that

she had to go and get her lunch.  (Doc. 22-6 at ¶ 46 (n).)  Plaintiff was having difficulty

with her feet that day, and refused.  (*Id.*)  On the same day, following the lunch request,

Sandy belittled Plaintiff in front of a customer and told her to go home.  (*Id.*)  Sandy then

blocked her way, but Plaintiff was able to get around her and leave.  (*Id.*)  Sandy then

followed Plaintiff to her car and would not allow her to go until Plaintiff threatened to call

the police.  (*Id.*)

On June 19, 2002, Plaintiff was seen by T.J. Craparo, M.D., for anxiety and

insomnia related to Plaintiff's workplace conflicts.  (Doc. 20-16, Ex. J.; Doc. 22-7 at ¶¶ 64-

67.)  Plaintiff also submitted evidence that on June 24, 2002, she sent a letter to the

Pennsylvania Human Relations Commission ("PHRC").  (Doc. 20-10 at 153-54; Doc. 22-7

at ¶¶ 50, 51.)  A copy of the letter was sent certified mail to both Jay Manning and Susan

Sells.  (*Id.*)  According to Plaintiff, the letter specifically stated that she was being

discriminated against due to her Polish nationality and because she was over forty (40)

years of age.  (*Id.*)

Plaintiff further submitted evidence that Sandy twice assigned Plaintiff to do tasks

Plaintiff felt were managerial duties.  (Doc. 20-7 at 106-112; Doc. 22-7 at ¶¶ 46 (aaa)-

2

(ccc).)  These tasks included calling an employee to inform her not to come into work, and moving change from one register to another.  (*Id.*)  Plaintiff submitted evidence that prior to this, she had only performed what she felt to be Sales Associate duties.  (Doc. 22-6 at ¶ 16.)  Then, on Labor Day, September 2, 2002, Sandy did not schedule Plaintiff to work that day.  (Doc. 20-5 at 75-80.)  Plaintiff submitted evidence that she had requested to work, but was told she was not scheduled because the college kids had wanted to work.  (Doc. 22-7 at ¶ 46 (rr).)  On September 11, 2002, Nicole Sandy was fired.  (Doc. 22-1 at 1.)

A new Store Manager, Alicia Paparella ("Paparella"), was hired from a store specializing in the sale of athletic shoes.  (Doc. 22-6 at ¶ 46 (hh).)  Plaintiff got along with Paparella at the beginning of her employment, but within two weeks Plaintiff began to have problems with Paparella as well.  (*Id.* at ¶ 46 (z).)  On October 18, 2002, Paparella divided the store in half and instructed Plaintiff to work in the half with cheaper priced shoes.  (*Id.* at ¶ 46 (dd).)  Paparella then told Plaintiff on October 19, 2002, that she was no longer allowed to sell athletic shoes until Plaintiff underwent training.  (*Id.* at ¶¶ 46 (ee), (ff).)  According to Plaintiff, other employees who did not receive training were allowed to sell athletic shoes.  (*Id.* at ¶ 46 (hh).)  Plaintiff did not receive training on athletic shoes prior to her termination in November of 2002.  (*Id.* at ¶ 46 (ff); Doc. 14-8, Ex. 5 at ¶ 3.)

On October 23, 2002, Plaintiff sent a letter to the owner of Shoe Show, Mr. Tucker, describing the problems she was experiencing.  (Doc. 20-10 at 156; Doc. 22-7 at ¶ 53.)  On October 28, 2002, Paparella assigned Plaintiff to carry and stack boxes.  (Doc.

22-7 at ¶ 46 (mm).)  Plaintiff and her husband complained to Jay Manning ("Manning"),

Defendant's Human Resources Manager, about Paparella's work assignments.  (*Id.* at ¶¶

46 (nn)-(pp).)  On October 31, 2002, Manning called Plaintiff concerning her complaints

about being assigned to do boxes and other tasks, and told her that she had to adhere to

Paparella's assignments.  (*Id.*)

Plaintiff further submitted evidence that during the period of June 2002 to

November 2002, Sandy and Paparella scheduled Plaintiff to work less than twenty two

(22) hours a week although she had previously worked thirty (30) to thirty-two (32) hours

per week.  (*Id.* at ¶¶ 46 (tt)-(vv).)  Sandy, Paparella and Oross told Plaintiff that her hours

were reduced because work was slow and it was necessary to equalize employees'

hours.  (Doc. 20-6 at 82-87; Doc. 19-1 at vi.)  Plaintiff felt that her seniority entitled her to

more hours.  (Doc. 22-7 at ¶ 46 (vv).)

On November 2, 2002, Plaintiff sent a second letter to the PHRC to add additional

information to her previous complaints.  (Doc. 22-1 at 1-2; Doc. 22-7 at ¶ 55.)  Then, on

November 20, 2002, Manning sent Plaintiff a letter concerning his investigation, following

his discussions with Plaintiff, in which he indicated that he was unable to determine any

evidence of discrimination on the part of the store manager or anyone else in supervision

of Plaintiff's employment.  (Doc. 22-1 at 3-4; Doc. 22-7 at ¶ 56.)  Manning further

indicated that Plaintiff had self-imposed limitations on the hours she was available to

work, and he informed Plaintiff that he had found her conduct to be disrespectful and

insubordinate at times.  (Doc. 22-1 at 3-4.)

Two days later, on November 22, 2002, Plaintiff was suspended for alleged

insubordination.  (Doc. 22-7 at ¶¶ 46 (iii)-(qqq).)  On that day, Plaintiff was accused of

taking a break without signing out, and was reprimanded by Sandra Bonifanti ("Bonifanti"). (*Id.*) Later that same day, Plaintiff was instructed by Bonifanti to clean the windows during store hours. (*Id.*) Plaintiff submitted evidence that she informed Bonifanti she would clean the windows after she completed work that Paparella had instructed her to do. (*Id.*) Bonifanti allegedly screamed at Plaintiff to do the windows while Plaintiff was waiting on a customer. (*Id.*) Plaintiff further submitted evidence that she did not refuse to clean the windows, but was sent home for insubordination before she could complete the task. (*Id.*) On or about November 29, 2002, Plaintiff's employment was terminated by Oross after determining Plaintiff had been insubordinate. (*Id.*)

After her termination, on December 20, 2002, Plaintiff filed a complaint with the PHRC alleging discrimination based on Plaintiff's national origin and age, as well as retaliation. (Doc. 20-11 at 164.) Then on November 03, 2003, Plaintiff filed her Complaint with the Court. Defendant filed a motion for summary judgement. The motion is fully briefed and the matter is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

6

(1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### 1)    Discrimination

The Complaint alleges that Defendant subjected Plaintiff to intentional discrimination by (1) reducing her scheduled hours, (2) assigning her additional duties, (3)  limiting her ability to earn commissions, and (4) subsequently terminating her employment, because of her national origin, in violation of Title VII and the PHRA, and age, in violation of the ADEA and the PHRA.

### a)    Title VII

Title VII states in pertinent part: "It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's . . . national origin . . . ."  42 U.S.C. § 2000e-2(a).  One manner in which an employer violates Title VII is where it engages in the practice of singling out a member of a protected group for treatment less favorable than that received by other similarly situated individuals, on the basis of an impermissible criterion.  *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  In such cases of disparate treatment, proof of discriminatory intent is critical; "liability depends on whether the [plaintiff's national origin] actually motivated the employer's decision."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

7

530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)) (internal quotations omitted).  Due to the invidious nature of discriminatory conduct, perpetrators rarely provide plaintiffs with direct evidence of discriminatory intent.  *See Metal Serv. Co.*, 892 F.2d at 347 n.6.  Consequently, Plaintiff may sustain a Title VII claim by presenting either direct or circumstantial evidence of intent.  *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990).  In the absence of direct evidence, Plaintiff must resort to the burden-shifting framework set forth in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973), to establish intent.  *Weldon*, 896 F.2d at 796-97.  In the instant matter, the Complaint alleges Defendant subjected Plaintiff to disparate treatment due to her national origin.  Moreover, Plaintiff offers only indirect evidence of Defendant's alleged discriminatory intent.  Consequently, analysis of Plaintiff's national origin discrimination claims must proceed under the *McDonnell Douglas* framework.[1]

### i)   Prima Facie Case

The burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish her prima facie case, which, if successful, raises an inference of national origin and/or age discrimination.  *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797.  Plaintiff may establish her prima facie case by showing: (1) membership in a protected group; (2) qualification for the job in question;

---

[1]   State PHRA claims are subject to the same analysis as Title VII claims.  *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995).  Thus, while the Court will discuss Plaintiff's claims under the framework of Title VII, the resulting analysis applies with equal force to Plaintiff's PHRA national origin discrimination claim.

(3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).  After this initial showing, the burden of production then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for the adverse action." *Metal Serv. Co.*, 892 F.2d at 347 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  "Where the employee is unable to establish a prima facie case, . . . no inference of discrimination is raised and the employer has no burden to proffer a reason for any action." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 n.1 (3d Cir. 2001) (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 174 (3d Cir. 1988)).

In the instant matter, the first three elements of Plaintiff's prima facie case are not disputed.  Plaintiff was born in the country of Poland and spoke with an accent.  (Doc. 19-1 at v, 11; Doc. 22-6 at ¶¶ 2, 3, 4, 6, 45.)  As such, Plaintiff's membership in the protected group is irrefutable.  In addition, Plaintiff submitted evidence of a lengthy tenure as a Sales Associate, including evidence that she received numerous positive evaluations from her supervisor.  (*See, e.g.,* Doc. 20-15 at 1-5; Doc. 22-6 at ¶¶ 6, 12.)  Consequently, Plaintiff appears to have been qualified for this position.  Plaintiff also provided evidence of four potential adverse employment actions: reduction in her scheduled hours (Doc. 19-2 at ¶ 2; Doc. 22-7 at ¶ 46 (tt); Doc. 20-1 at 17), assignment of additional duties (Doc. 19-2 at ¶¶ 7, 14, 15;  Doc. 20-2 at 26, 105-111), limitations placed on her ability to earn commissions (Doc. 19-2 at ¶ 8; Doc. 20-2 at 112-16), and termination of her employment (Doc. 20-2 at 137-47).  Defendant contends, however, that Plaintiff has failed to submit evidence that these alleged adverse employment actions give rise to an inference of

national origin discrimination sufficient to satisfy the fourth prong of Plaintiff's prima facie case.  The Court disagrees.

Under the fourth prong, in order to present a prima facie case, Plaintiff must establish circumstances supporting an inference of discrimination.  "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class."  *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999).  "Although a plaintiff may make out a prima facie case with such evidence . . . neither of these is required."  *Id.* (citing *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 356-57 (3d Cir. 1999)).  Thus, the analysis of whether an inference of discriminatory animus has been raised is governed by the "central focus" of the prima facie case -- that is, whether Defendant treated Plaintiff less favorably than other employees because of her national origin. *See Sarullo v. United States Postal Serv.,* 352 F.3d 789, 798 (3d Cir. 2003) (citing *Pivirotto*, 191 F.3d at 352). Reviewing the evidence offered by Plaintiff in the light most favorable to her, Plaintiff has offered sufficient evidence to establish a prima facie case of national origin discrimination.

Defendant is correct that Plaintiff attributes Sandy's conduct toward her to Plaintiff's discussions with Oross about Sandy's misconduct and performance deficiencies.  (Doc. 20-3 at 43-48.)  Further, Plaintiff does admit that Sandy behaved badly towards other employees outside the protected classes and was not a very nice person towards anybody.  (Doc. 20-5 at 61, 63.)  However, Plaintiff has also submitted

10

evidence which demonstrates that similarly situated individuals outside the protected classes, *i.e.* American born co-workers, were treated more favorably under Paparella. (Doc. 20-6 at 17-20, 72-75, 82-87; Doc. 20-7 at 120-22; Doc. 22-6 at ¶ 46 (hh); Doc. 22-7 at ¶ 46 (ddd).)  Plaintiff has satisfied her burden of establishing a prima facie case, thus, in accordance with *McDonnell Douglas,* the burden shifts to Defendant to provide a facially legitimate reason for the adverse employment actions taken against Plaintiff.

### ii)      Non-discriminatory Reason

An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797.  To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.*  Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257).   If, however, Defendant fails to satisfy this minimal burden of production, the Court must enter judgment in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

Defendant has offered evidence of legitimate, nondiscriminatory reasons for each of the adverse employment actions suffered by Plaintiff.  With respect to the reduction of Plaintiff's hours, Defendant argues that a drop in sales volume at the store limited the hours of work available to each employee. (Doc. 13 at ¶ 3.)  Defendant further asserts

11

that Plaintiff's hours were reduced in an attempt to equalize the number of hours each employee was allowed to work.  (*Id.*)  With respect to the assignment of additional duties to the Plaintiff, Defendant argues that the complained of tasks were appropriate requests within Plaintiff's job description, and that other employees were required to perform such tasks.  (Doc. 13 at ¶¶ 1, 14, 15; Doc. 14-8, Ex. 7 at ¶ 3.)  With respect to the limitations placed on Plaintiff's ability to earn commission, Defendant argues that Plaintiff was restricted from selling athletic shoes, pending training, after she was observed making mistakes.  (Doc. 14-8 , Ex. 5 at ¶ 3.)  Further, Defendant asserts that Plaintiff was not scheduled to work on Labor Day (a day with typically high commissions) because she did not always work that holiday.  (Doc. 13 at ¶ 3.)  Finally, with respect to the termination of Plaintiff's employment, Defendant submitted evidence that the decision to terminate Plaintiff was based on her insubordination.  (Doc. 13 at ¶ 12; Doc. 14-8, Ex. 4 at ¶ 11.) Clearly, Defendant has satisfied the relatively light burden of production required under *McDonnell Douglas.*  Thus, Plaintiff needs to establish that Defendant's articulated reasons are pretextual.

### iii)    Pretext

To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764.  The Third Circuit Court of Appeals has held that Plaintiff may establish that Defendant's proffered reasons are "unworthy of credence," *Sorba v. Pa.*

12

*Drilling Co.*, 821 F.2d 200, 204 (3d Cir. 1987), by introducing evidence that the employer

subjected individuals outside the protected class to more favorable treatment. *See, e.g.,*

*Fuentes*, 32 F.3d. at 765; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 179; *Weldon*,

896 F.2d at 797.  If Plaintiff successfully points to evidence sufficient to discredit

Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the

initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*,

56 F.3d 491, 495 (3d Cir. 1995).  Even where the majority of this evidence comes from

uncorroborated deposition testimony, the Third Circuit Court of Appeals has held that this

is sufficient to survive summary judgment. *Weldon*, 896 F.2d at 800.

    With respect to the termination of Plaintiff's employment, Plaintiff failed to submit

evidence from which a factfinder could reasonably disbelieve Defendant's articulated

reasons, or believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of Defendant's action. Defendant submitted evidence

that the decision to terminate Plaintiff was based on her insubordination.  (Doc. 13 at ¶

12; Doc. 14-8, Ex. 4 at ¶ 11.)  Plaintiff admits that she did not clean the mirrors as

instructed by Bonifanti and, instead, told Bontifanti that she would do them later.  (Doc.

20-8 at 128-36.)  Further, Plaintiff failed to submit evidence that anyone outside of the

protected class, who was insubordinate, was not terminated.  (Doc. 20-8 at 145-50.)

    On the other hand, with respect to the other adverse employment actions, Plaintiff

submitted evidence that, if believed by the trier of fact, tends to show that Defendant's

facially legitimate reasons are unworthy of credence.  With respect to the reduction in

Plaintiff's hours, Defendant argues that a drop in sales volume at the store limited the

hours of work available to each employee. (Doc. 13 at ¶ 3.)  Defendant further asserts

13

that Plaintiff's hours were reduced in an attempt to equalize the number of hours each employee was allowed to work.  (*Id.*)  Plaintiff submitted evidence that only her hours were reduced, while other employees outside the protected class had their hours increased.  (Doc. 20-6 at 82-87.)  Plaintiff also submitted evidence that she was denied the opportunity to work Saturdays, which were worked by other employees outside of the protected class.  (*Id.* at 17-19).  Further, Plaintiff submitted evidence that she was not scheduled for evenings.  (*Id.* at 19-20, 72-75.)  The Court finds that cumulatively, this evidence is sufficient for a reasonable factfinder to conclude that the reasons tendered by Defendant are unworthy of belief.

With respect to the assignment of additional duties to the Plaintiff, Defendant argues that the complained of tasks were appropriate requests within Plaintiff's job description, and that other employees were required to perform such tasks.  (Doc. 13 at ¶¶ 1, 14, 15; Doc. 14-8, Ex. 7 at ¶ 3.)  Plaintiff submitted evidence that she was asked by Paparella to stack fifty-pound (50lb) boxes, that she never heard Paparella ask other employees to do the task, and that the job description for a Sales Associate only requires the ability to lift twenty pounds (20lbs).  (Doc. 22-4 at 3; Doc. 22-7 at ¶ 46 (mm).)  Plaintiff also submitted evidence that Paparella assigned Plaintiff to write sales flags during Plaintiff's entire shift one day, such that Plaintiff made less than $5.00 in commission while her co-workers made substantially more that day.  (Doc. 20-7 at 120-22; Doc. 22-7 at ¶ 46 (ddd).)  The Court finds that cumulatively, this evidence is sufficient for a reasonable factfinder to conclude that the reasons tendered by Defendant are unworthy of belief.

With respect to the limitations placed on Plaintiff's ability to earn commission,

Defendant argues that Plaintiff was restricted from selling athletic shoes, pending training, after she was observed making mistakes.  (Doc. 14-8 , Ex. 5 at ¶ 3.)  Plaintiff submitted evidence that she never made a mistake selling athletic shoes, and that she had simply sold the customer the sneaker the customer had requested.  (Doc. 20-7 at 112-19.)  Plaintiff further submitted evidence that she had been selling shoes, including athletic shoes, for 5 years without complaints.  (Doc. 19-2 at ¶ 8; Doc. 22-7 at ¶ 61.)  Plaintiff also submitted evidence that other employees who had not received training were allowed to sell athletic shoes.  (Doc. 22-6 at ¶ 46 (hh).)  The Court finds that cumulatively, this evidence is sufficient for a reasonable factfinder to conclude that the reasons tendered by Defendant are unworthy of belief.

Consequently, because the Court finds there are no genuine issues of material fact concerning Defendant's facially nondiscriminatory reasons for termination of Plaintiff's employment, Defendant's motion for summary judgement on this point will be granted.  Conversely, because the Court finds there are genuine issue of material fact concerning Defendant's facially nondiscriminatory reasons for the remaining adverse employment actions, entry of summary judgment on Plaintiff's national origin discrimination claims on these points would be inappropriate.

### b)    ADEA

The ADEA provides:  "It shall be unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ."  29 U.S.C. § 623(a).  Although the ADEA and Title VII afford protection to different cross-sections of society, the legal analysis under both statutory

15

schemes is nearly identical.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643-44 (3d Cir. 1998); *Keller*, 130 F.3d at 1108.  Just as in a Title VII action, ADEA plaintiffs may establish a cause of action by demonstrating disparate treatment.  *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).  Moreover, in such instances, proof of discriminatory intent is a crucial component.  *Id.* at 300 (citing *Hazen*, 507 U.S. at 610)).  As in Title VII cases, ADEA plaintiffs with only indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework.  *Id.*  In the instant matter, the Complaint alleges that Defendant subjected Plaintiff to disparate treatment due to her age.  Moreover, Plaintiff offers only indirect evidence of Defendant's alleged discriminatory intent.  Consequently, analysis of Plaintiff's age discrimination claims must proceed under the *McDonnell Douglas* analytical framework.[2]

### i)   Prima Facie Case

As noted in the Court's Title VII analysis, the burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish her prima facie case, which, if successful, raises an inference of age discrimination.  *Keller*, 130 F.3d at 1108; *Seman v. Coplay Cement Co.*, 26 F.3d 428, 432 (3d Cir. 1994); *Fuentes*, 32 F.3d 759, 763.  Under the ADEA, Plaintiff must establish:  (1) she belongs to the protected class, *i.e.*, was over forty; (2) she was qualified for the position; (3) she suffered an adverse employment

---

[2]     State PHRA claims are subject to the same analysis as federal ADEA claims.  *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).  Thus, while the Court will discuss Plaintiff's claims under the framework of the ADEA, the resulting analysis applies with equal force to Plaintiff's PHRA age discrimination claim.

action; and (4) the presence of circumstances supporting an inference of discrimination. *Swierkiewicz*, 534 U.S. at 510; *Monaco*, 359 F.3d at 300.  Where there is a demotion or discharge, evidence that Plaintiff was ultimately replaced by a person sufficiently younger may be sufficient to support an inference of discrimination.  *Simpson*, 142 F.3d at 644 n.5.

In the instant matter, the first three elements of Plaintiff's prima facie case are not disputed.  Plaintiff was at all relevant times was over the age of forty. (Doc. 19-1 at v; Doc. 22-6 at ¶ 3.)  As such, Plaintiff's membership in the protected groups is irrefutable. In addition, Plaintiff submitted evidence of a lengthy tenure as a Sales Associate, including evidence that she received numerous positive evaluations from her supervisor. (*See, e.g.,* Doc. 20-15 at 1-5; Doc. 22-6 at ¶¶ 6, 12.)  Consequently, Plaintiff appears to have been qualified for this position.  Plaintiff also provided evidence of four potential adverse employment actions: reduction in her scheduled hours (Doc. 19-2 at ¶ 2; Doc. 22-7 at ¶ 46 (tt); Doc. 20-1 at 17), assignment of additional duties (Doc. 19-2 at ¶¶ 7, 14, 15;  Doc. 20-2 at 26, 105-111), limitations placed on her ability to earn commissions (Doc. 19-2 at ¶ 8; Doc. 20-2 at 112-16), and termination of her employment (Doc. 20-2 at 137-47).  Finally, Plaintiff submitted evidence supporting an inference of discrimination. With respect to each instance of adverse action endured by Plaintiff, evidence has been submitted, which demonstrates that similarly situated individuals sufficiently younger then Plaintiff received more favorable treatment.  (*See, e.g.,* Doc. 20-6 at 17-20, 72-75, 82-87; Doc. 20-7 at 120-22; Doc. 22-6 at ¶ 46 (hh); Doc. 22-7 at ¶ 46 (ddd).)  Although the evidence indicates that at least one individual potentially receiving more favorable treatment was within the protected class during part of the discrimination alleged by

17

Plaintiff, that individual was not employed with Shoe Show throughout the entire period of time in question.  (Doc. 20-4 at 55-6.)  Plaintiff was therefore, the only employee within the protected class for much of the time in which the alleged discrimination occurred. Thus, in accordance with *McDonnell Douglas,* the burden shifts to Defendant to provide a facially legitimate reason for the adverse employment action taken against Plaintiff.

### ii)      Non-Discriminatory Reason

As set forth in the Court's Title VII analysis, Defendant need not prove that the articulated reasons actually motivated its conduct to satisfy its burden.  *Fuentes*, 32 F.3d at 763.  Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action.  *Id.*

The reasons tendered by Defendant are the same as those discussed in the Court's Title VII analysis.  Nonetheless, for the sake of clarity, they will be repeated.  With respect to the reduction of Plaintiff's hours, Defendant argues that a drop in sales volume at the store limited the hours of work available to each employee. (Doc. 13 at ¶ 3.) Defendant further asserts that Plaintiff's hours were reduced in an attempt to equalize the number of hours each employee was allowed to work.  (*Id.*)  With respect to the assignment of additional duties to the Plaintiff, Defendant argues that the complained of tasks were appropriate requests within Plaintiff's job description, and that other employees were required to perform such tasks.  (Doc. 13 at ¶¶ 1, 14, 15; Doc. 14-8, Ex. 7 at ¶ 3.)  With respect to the limitations placed on Plaintiff's ability to earn commission, Defendant argues that Plaintiff was restricted from selling athletic shoes, pending

training, after she was observed making mistakes.  (Doc. 14-8 , Ex. 5 at ¶ 3.)  Further,

Defendant asserts that Plaintiff was not scheduled to work on Labor Day (a day with

typically high commissions) because she did not always work that holiday.  (Doc. 13 at ¶

3.)  Finally, with respect to the termination of Plaintiff's employment, Defendant submitted

evidence that the decision to terminate Plaintiff was based on her insubordination.  (Doc.

13 at ¶ 12; Doc. 14-8, Ex. 4 at ¶ 11.)  Clearly, Defendant has satisfied the relatively light

burden of production required under *McDonnell Douglas.*  Thus, Plaintiff must establish

that Defendant's articulated reasons are pretextual.

### iii)   Pretext

As set forth in the Court's Title VII analysis, to survive a summary judgment

motion, Plaintiff must present "some evidence, direct or circumstantial, from which a

factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2)

believe that an invidious discriminatory reason was more likely than not a motivating or

determinative cause of [Defendant's] action."  *Fuentes*, 32 F.3d at 764.

The evidence submitted by Plaintiff is the same as that discussed in the Court's

Title VII analysis.  Thus, with respect to the termination of Plaintiff's employment, Plaintiff

failed to submit evidence from which a factfinder could reasonably disbelieve Defendant's

articulated reasons, or believe that an invidious discriminatory reason was more likely

than not a motivating or determinative cause of Defendant's action.  On the other hand,

with respect to the other adverse employment actions, Plaintiff submitted evidence that, if

believed by the trier of fact, tends to show that Defendant's facially legitimate reasons are

unworthy of credence.  Consequently, because the Court finds there are no genuine

issues of material fact concerning Defendant's facially nondiscriminatory reasons for

19

termination of Plaintiff's employment, Defendant's motion for summary judgement on this point will be granted.  Conversely, because the Court finds there are genuine issue of material fact concerning Defendant's facially nondiscriminatory reasons for the remaining adverse employment actions, entry of summary judgment on Plaintiff's age discrimination claims on these points would be inappropriate.

### 2.    Retaliation

Plaintiff alleges that Defendant violated the anti-retaliation provisions of Title VII, the ADEA and the PHRA by subjecting Plaintiff to adverse employment actions after she complained about Defendant's allegedly discriminatory conduct.  The Third Circuit Court of Appeals has held that due to the similarity of the anti-retaliation provisions of Title VII, the ADEA and the PHRA, analysis of claims under each should be conducted under the same analytical framework.  *See Fogleman v. Mercy Hosp., Inc.*, 283 F.2d 561, 567 (3d Cir. 2002).  Analysis of a pretext retaliation claim such as this, follows the by now familiar *McDonnell Douglas* burden-shifting framework discussed above.  *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).

Plaintiff must first establish her prima facie case of retaliation by demonstrating: (1) she engaged in a protected activity; (2) Defendant terminated her employment subsequent to or contemporaneously with such activity; and (3) a causal link exists between the protected activity and the termination of Plaintiff's employment.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).  Defendant contends that Plaintiff has failed to establish her prima facie case because no causal link exists between the protected activity and the termination of Plaintiff's employment.  The Court agrees.

20

As noted by the Third Circuit Court of Appeals, a person engages in protected activity when he opposes a practice made unlawful by Title VII, the ADEA or the PHRA. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Undoubtedly, the lodging of generalized complaints, bereft of any mention of discrimination of any kind, falls well outside the scope of protected activity under Title VII, the ADEA and the PHRA. *See id.*

Plaintiff presented evidence that she made two complaints that constitute protected activity: her letter to the PHRC dated June 24, 2002, and her complaint to the PHRC on December 20, 2002. (Doc. 20-10 at 153-53; Doc. 22-7 at ¶¶ 50, 51; Doc. 20-11 at 164.) However, Plaintiff's complaint dated December 20, 2002, cannot demonstrate a causal link between the protected activity and the termination of Plaintiff's employment, since the complaint was filed after Plaintiff was already terminated.

Further, based on the evidence in record, no reasonable jury could conclude that a causal link existed between Plaintiff's June 24, 2002, letter and her termination. Plaintiff admits that she did not tell anyone at Shoe Show about her communications with the PHRC prior to her termination. (Doc. 20-10 at 162.) Plaintiff asserts only that Manning and Susan Sells were sent certified copies of her letter dated June 24, 2002. (Doc. 20-10 at 153-54; Doc. 22-7 at ¶¶ 50, 51.) Plaintiff fails to offer evidence that either Sandy, Paparella, Bontifanti, or Oross had knowledge of Plaintiff's complaints of discrimination to the PHRC, and Plaintiff further fails to offer evidence that Manning or Sells were involved in any adverse employment actions taken against Plaintiff. The absence of any evidence indicating that a decision-maker working for the employer had knowledge of a plaintiff's protected activity may provide a basis to conclude that no causal link exists. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Jones v. Sch. Dist. of*

*Phila.*, 198 F.3d 403, 414 (3d Cir. 1999).  Thus, the Court finds there is no genuine issue of material fact concerning Plaintiff's failure to establish a prima facie case of retaliation. Accordingly, judgment will be entered in favor of Defendant on Plaintiff's retaliation claims.

## CONCLUSION

The Court will grant Defendant's motion in part and deny it in part.  The Court finds that there are no genuine issues of material fact concerning the legitimate reasons proffered by Defendant for the termination of Plaintiff's employment.  As such, Plaintiff has failed meet her evidentiary burden under *McDonnell Douglas* with respect to this issue and Defendant's motion for summary judgment with respect to Plaintiff's age and national origin discrimination claims on the issue of termination will be granted.  Further, the Court finds that there are genuine issues of material fact concerning the legitimate reasons for the remaining adverse employment actions taken against Plaintiff.  As such, Plaintiff has meet her evidentiary burden under *McDonnell Douglas* and summary judgment with respect to Plaintiff's age and national origin discrimination claims as to these issues would be inappropriate.  In addition, Plaintiff has failed to submit evidence indicating that a causal link exists between her protected activity and the termination of Plaintiff's employment, as such, the Court finds there is no genuine issue of material fact concerning Plaintiff's failure to establish a prima facie case of retaliation and Defendant's motion for summary judgment as to these claims will be granted.

An appropriate Order will follow.


 November 3, 2005                      /s/ A. Richard Caputo
Date                                      A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JANET KLIMCZAK,

      Plaintiff,

         v.

SHOW SHOE COMPANIES

      Defendant.

CIVIL ACTION NO. 3:03-CV-1973

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this   3rd   day of November, 2005, **IT IS HEREBY ORDERED** that Defendant's Motion For Summary Judgment (Doc. 12) is **GRANTED in part** and **DENIED in part**:

(1)    Defendant's motion is **GRANTED** insofar as it seeks summary judgment with respect to:

      (a)    Plaintiff's Title VII, ADEA and PHRA claims for retaliation;

      (b)    Plaintiff's Title VII and PHRA national origin discrimination claims with respect to termination of Plaintiff's employment; and

      (c)    Plaintiff's ADEA and PHRA age discrimination claims with respect to termination of Plaintiff's employment.

(2)    Defendant's motion is **DENIED** with respect to:

      (a)    The remainder of Plaintiff's Title VII and PHRA national origin discrimination claims; and

      (b)    The remainder of Plaintiff's ADEA and PHRA age discrimination claims.

        /s/ A. Richard Caputo
        A. Richard Caputo
        United States District Judge